**HONOR LAW GROUP, PLLC**
James M. Cool, State Bar No. 028023
4450 S. Rural Rd., Suite C-220
Tempe, AZ 85282
(602) 282-0223 (office)
(888) 651-1270 (facsimile)
Attorney E-mail:  cool@aztrialattorneys.com

**The Law Office of Macy D. Hanson, PLLC**
Macy D. Hanson, Miss. Bar No. 104197
**(Pro hac vice application forthcoming)**
102 First Choice Drive
Madison, Mississippi 39110
Telephone: (601) 853-9521
Facsimile: (601) 853-9327
macy@macyhanson.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA PRESCOTT DIVISION

| | |
|---|---|
| Brian Winkler<br><br>             Plaintiff,<br><br>             v.<br><br>GM Law Firm, LLC; Chantel L. Grant; National Legal Staffing Support, LLC; Gregory Fishman; Julie Queler; Kevin Mason; Resolvly, LLC; and John and Jane Does Defendants 1-5.<br><br>             Defendants. | Civil Action No. _____<br><br>Complaint for: violations of the RICO Act; legal malpractice; fraud; and breach of the duty of good faith and fair dealing |

## COMPLAINT

THE PLAINTFF, Brian Winkler, files suit against the above-named Defendants, and pleads as follows:

*JURY TRIAL DEMANDED*

1

1

**INTRODUCTION**

2

    1.    This is a single-plaintiff consumer case about an illegal nationwide, advanced-

3

fee, student loan debt resolution scam that leaves vulnerable debtors, like the Plaintiff, Brian

4

Winkler, tens of thousands of dollars poorer[1], in exchange for broken promises about

5

impossible legal services that are never, and never could be, actually performed.

6

    2.    The Defendants, through their web of business relationships, engage in illegal

7

cold-call-telemarketing to solicit consumers, like Brian Winkler, struggling with their

8

private student loan debt to enroll in the Defendants' student loan debt resolution "program"

9

– which turns out to be nothing more than the Defendants' Enterprise's illegal collection of

10

up-front fees for the performance of little, if any, legitimate legal/debt resolution services.

11

    3.    In brief, the "student loan debt resolution" racket at issue in this lawsuit works

12

as follows: Resolvly, LLC, a shell limited liability company controlled by Gregory Fishman

13

and Julie Queler, purchases, or otherwise obtains under false pretenses, sales-leads of

14

consumers, like Brian Winkler, who have large private student loan balances. The

15

Defendants particularly focus their marketing efforts on consumers who are struggling with

16

making timely payments on their student loan accounts.

17

    4.    National Legal Staffing Support, LLC ("NLSS"), another shell limited

18

liability company controlled by Gregory Fishman and Julie Queler, cold-calls the

19

consumers, like Brian Winkler, listed on these sales-leads to solicit customers for the

20

"student loan debt resolution program" at issue in this lawsuit. The sales staff[2] of this racket,

21

22

---

[1] These losses are in addition to Brian Winkler's consequential damages suffered as a result of the Defendants' student loan debt resolution "program", caused by the "program" requiring that all direct payments, and direct communication, to Brian Winkler's student loan creditors cease. The non-payment to, and non-communication with, Brian Winkler's student loan creditors has caused Brian Winkler's non-dischargeable student loan balances to explode, with the Defendants' motive being to ensure that *their* monthly payments from Brian Winkler's bank account continue to be made.

[2] Upon information and belief, the NLSS sales staff is directly supervised by Gregory Fishman and Joseph DeVito, the head NLSS salesman and "fixer" for NLSS and GM Law Firm.

23

24

25

26

27

28

employees of Gregory Fishman and Julie Queler's shell companies, represent to the recipients of these cold-calls, like Brian Winkler, that they work for attorneys, Kevin Mason and Chantel Grant, of the GM Law Firm[3], and that they offer a debt resolution program that is guaranteed to eliminate all the consumer's private student loan debt for payment of fifty cents on the dollar[4] of the principal balance of the consumer's total student loan balance.

5.      The Defendants' marketing pitch to Brian Winkler was as follows: that after completing the Kevin Mason/Chantel Grant/GM Law Firm/NLSS  "program" and paying of half of the amount of his total loan balance(s) – paid over 72 equal monthly payments drawn from his bank account by automated clearing house – that Brian Winkler's entire student loan balance would be completely eliminated.

6.      These representations, relied upon by Brian Winkler, were lies.

7.      The attorney marketing fronts for this racket, Florida attorneys, Kevin Mason and Chantel Grant[5], and their associates at GM Law Firm, provide the cover of legitimacy for the illegal "debt resolution" programs that the Defendants operate. The use of attorney marketing fronts, like Kevin Mason and Chantel Grant, to provide an air of legitimacy to this "debt resolution program" is essential to the racket's success in enrolling new clients (victims), like Brian Winkler.

---

[3] Initially, the attorney marketing fronts for the Defendants' "program" were Stuart Goldberg (prior to 2015), followed by Kevin Mason (beginning in 2015), and then Kevin Mason and Chantel Grant of GM Law Firm (beginning in 2016).

[4] The Defendants' marketing agents do not make clear to whom, precisely, these payments ultimately flow. Like all aspects of the Defendants' "program", these details are never provided to the Defendants' clients, like Brian Winkler, even when the clients repeatedly press the Defendants' agents for these answers.

[5] Prior to Kevin Mason and Chantel Grant, Florida attorney, Stuart Goldberg, was the attorney marketing front for Defendants' "program". However, upon information and belief, Stuart Goldberg discovered that the Defendants' operation was a scam early into his involvement with it. Stuart Goldberg, then, ended his relationship with this "program", but the managers of the Enterprise at issue in this lawsuit – namely, Gregory Fishman, Julie Queler, and NLSS – continued to use Stuart Goldberg's name on the "program materials" for this racket. This practice continued until Kevin Mason and Chantel Grant later became the new attorney marketing fronts for the Enterprise's "program" that at issue in this lawsuit.

3

8.      Throughout the relevant period (at least since 2015[6]), the Defendants have engaged individually, and in concert with one another, in unlawful, abusive, and unfair practices with respect to the attorney-client relationships formed with the Plaintiff, Brian Winkler.

9.      Brian Winkler pleads the following claims against the Defendants: (a) claims for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) as to all Defendants; (b) fraud as to all Defendants (excluding Kevin Mason and GM Law Firm); (c) claims for attorney malpractice against GM Law Firm, Chantel Grant, and Kevin Mason; and (d) breaches of the duty of good faith and fair dealing against Kevin Mason, Chantel Grant, and GM Law Firm, LLC, only.

## PARTIES

10.      The Plaintiff, Brian Winkler, is an adult citizen of the state of Arizona. He resides in Cottonwood, Yavapai County, Arizona.

11.      First-named Defendant, GM[7] Law Firm, LLC, is a Florida limited liability company that purports to offer professional legal services to the public. This law firm is owned and operated by Florida attorneys, Kevin P. Mason and Chantel L. Grant, upon information and belief - although its activities are controlled by Gregory Fishman and Julie Queler. Chantel L. Grant, is the registered agent of GM Law Firm, LLC. Its principal place of business is: 1515 South Federal Highway, Suite 105, Boca Raton, Florida 33432.

12.      Second-named Defendant, Chantel L. Grant, is a Florida resident and member of the Florida Bar. Chantel Grant is not licensed to practice law in the state of Georgia.

---

[6] Upon information and belief, Chantel Grant's involvement with this Enterprise did not begin until 2016.
[7] The "GM" in GM Law Firm stands for Grant and Mason.

4

13. Third-named Defendant, National Legal Staffing Support, LLC ("NLSS"), is a Delaware limited liability company, with its principal place of business located in the same building as the offices of the other Defendants in this action, at: 1515 South Federal Highway, Suite 113, Boca Raton, Florida 33432. NLSS, and its agents, John and Jane Doe Defendants 1-5, acted as agents and as co-conspirators and co-tortfeasors, acting in concerted action with the other Defendants, forming a RICO Enterprise, and creating the basis for joint and several liability on the part of all Defendants in this litigation.

14. Fourth-named Defendant, Gregory Fishman is a Florida citizen. Gregory Fishman, upon information and belief, is the leader of the RICO Enterprise described in this Complaint. Gregory Fishman is a veteran of up-front-debt-resolution scams, going back, in particular, to a similar "credit card debt resolution program" – Debt Be Gone, LLC/Berges Law Group – that was shut down by a federally-appointed Receiver, after the Federal Trade Commission initiated litigation against that operation.

15. Fifth-named Defendant, Julie Queler, is a Florida citizen. Julie Queler, upon information and belief, is a primary investor, and business partner, to Gregory Fishman in this RICO Enterprise. Julie Queler is involved in the day-to-day management of this Enterprise.

16. Sixth-named Defendant, Kevin P. Mason, is a Florida attorney and a founding member of GM Law Firm. Kevin Mason is not licensed to practice law in the state of Georgia.

17. Seventh-named Defendant, Resolvly, LLC ("Resolvly"), is a Florida limited liability company, with its principal place of business located in the same building as NLSS, GM Law Firm, and the former Kevin Mason, P.A., at: 1515 South Federal Highway, Boca Raton, Florida 33432. Resolvly, and its agents, John and Jane Doe Defendants 1-5, act as

5

agents and as a co-conspirators and co-tortfeasors, acting in concerted action with the other Defendants, forming a RICO Enterprise, and creating the basis for joint and several liability on the part of all Defendants in this litigation.

18.     John and Jane Doe Defendants 1-5 (and/or XYZ Business Entity Defendants 1-5) are presently unidentified persons or companies who have participated with Defendants in this "student loan debt resolution" scheme, but whose identities are reasonably expected to be revealed during discovery in this litigation.

**JURISDICTION AND VENUE**

19.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. §§ 6101-6108. Further, this Court also has subject matter jurisdiction over this dispute based upon the complete diversity of citizenship of the Plaintiff (Arizona citizen) and all the Defendants (Florida citizens and business entities).

20.     This Court possesses specific personal jurisdiction over the Defendant in this action based upon their substantial and purposeful contacts with Arizona, the forum state. The Defendants have reached into Arizona, and availed themselves to the jurisdiction of this Court, by soliciting, and continuing regular communications and correspondence with, Brian Winkler.

21.     Venue for this dispute properly lies with this Court, as this litigation involves substantial alleged acts or omissions which occurred in the boundaries of the United States District Court for the District of Arizona.

**FACTS**

22.     On or about early March 2015, Brian Winkler received a telemarketing telephone call from an agent of "NLSS", on behalf of NLSS and its student loan debt resolution "program".

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

23.     During this call, the telemarketing sales agent of NLSS, whose identity is currently unknown, described the terms of the purported "student loan debt resolution" settlement program that is at issue in this lawsuit to Brian Winkler.

24.     Later, after being induced to join the Defendants' "program" via their material misrepresentations, Brian Winkler was transferred to NLSS/Resolvly's sales manager, Joe DeVito, who closed Brian Winkler's enrollment into the Defendants' "program" over the telephone on, or about, March 5, 2015.

25.     The terms of the "program" that were represented to Brian Winkler, orally, during the telemarketing telephone calls that NLSS/Resolvly made to him in March 2015, and that induced him to join this purported "program", are contained in both the "Program Overview" materials and the "Welcome to the Program" materials, which are incorporated, by reference, into this Complaint.

26.     A copy of the "Program Overview" marketing materials – which also function as a telemarketing sales script[8] for this Enterprise – provided by the Defendants to Brian Winkler (by reading them, orally, during the telemarketing sales pitches in March 2015) is attached to, and incorporated into, this Complaint as Exhibit "1".

27.     Brian Winkler distinctly recalls the agents of the Defendants on the early March 2015 cold-call sales call making to him the exact promises of complete dismissal of his entire student loan debt in exchange for him paying 50% of his total loan balance, paid over 72 monthly-installments, that are contained in Ex. 1 to this Complaint. Brian Winkler, by joining the Defendants' "program" and making his "program" payments, relied on these false promises of the Defendants, and their sales agents.

_____

[8] Although these materials list Kevin Mason as the "program" attorney, this same script has been used by NLSS to enroll victims, including Brian Winkler, since its inception – and continues to this day, upon information and belief.

7

28.     Page 18 of this "Program Overview", Ex. 1, contains irrefutable examples of the fraudulent misrepresentations made during telemarketing calls to prospective clients, like Brian Winkler, of this racket in order to induce them to agree to the monthly, illegal, advanced-fee, "debt resolution" payments. Page 18 of the standard Kevin Mason/NLSS Welcome Packet states:

> "The costs of the service are a fixed flat fee that your attorney has allowed you to make monthly installment payments. In order to do this, your attorney utilizes a payment processing company called National Legal Staffing Support. This is the name that will show up on your monthly bank statement. This fee is all that you will have to pay.
>
> **Nothing more, nothing less.**
>
> You can expect to be debt free with [sic] 39 to 48 months from your first payment. **It could be less, but not longer.** The reason being is that the litigation process may take shorter because in many cases the banks and their debt collectors settle within the first 12 months of the lawsuit. This is a good thing." See Ex. 1, at Page (Slide) 18 (emphasis added).

29.     Although they likely regret it now, the Defendants put their telemarketing sales script, represented to and relied upon by Brian Winkler, in writing when they created their "Program Overview", Ex. 1.

30.     Brian Winkler does not have the telephone calls recorded, but the exact terms of the specific promises contained on Page 18 of Ex. 1 were made by the NLSS/Resolvly salespersons on all telemarketing calls to him in early March 2015. These marketing calls induced Brian Winkler to sign up for the Defendants' "student loan debt resolution program", because it seemed like a no-brainer to enroll in a program that had the legitimacy

8

of attorney involvement and oversight that **guaranteed** to have Brian Winkler's entire student loan balance ($52,183.00 at the time of enrollment) dismissed for only 50 cents on the dollar.

31. Moreover, Brian Winkler was told, during the telemarketing sales calls on the front-end in March 2015, consistent with Page 18 of Ex. 1, that NLSS was the "payment processor" for the "attorneys" who supervise, operate, and manage the "student loan debt resolution program" at issue in this action.

32. The truth, it turns out, is that Reliant Account Management, a California-based company, is the payment processor for this so-called "program"; NLSS actually functions as the "law firm", staying in contact with the clients (although feeding the clients lies, in order to keep the monthly payments from its client, like Brian Winkler, coming for as long as possible); and the "attorneys", Kevin Mason and Chantel Grant, are phantoms, insofar as they do not directly communicate with their clients, outside of rare occasions (like when litigation gets threatened, and only after jumping through many hoops to get such a call scheduled).

33. Further, the "Welcome to the Program" materials/sales script, orally represented to Brian Winkler by the NLSS/Resolvly sales staff, is attached to this Complaint as Exhibit "2".[9]

34. According to the "Welcome to the Program" materials/script: "The Law Office Of Kevin P. Mason P.A. IS A BOUTIQUE MULTI-JURISDICTIONAL LAW FIRM BASED IN SOUTH FLORIDA. OUR PRACTICE IS FOCUSED ON CONSUMER

---

[9] Once again, although these attached materials list "Kevin Mason" and "Kevin Mason, P.A." as the "program" law firm, the same script was used prior to Kevin Mason's involvement with this racket (which is believed to have begun in mid-to-late 2015) when Stuart Goldberg was (briefly) the attorney marketing front for this Enterprise.

1
2
3
4
5
6
7
8
9
10
11
12

RIGHTS IN STATE AND FEDERAL COURT, AS WELL AS IN ARBITRATION
MATTERS. OUR PRACTICE ENCOMPASSES DEFENDING OUR CLIENTS' RIGHTS
AGAINST ABUSIVE AND ILLEGAL PRACTICES BY DEBT COLLECTORS,
CREDITORS, AND CREDIT REPORTING AGENCIES. THE STAFF AT The Law Office
Of Kevin P. Mason P.A. HAS MANY YEARS OF EXPERIENCE REPRESENTING
PEOPLE LIKE YOU, THE AMERICAN CONSUMER, WHO IS FACING A VARIETY
OF LEGAL ISSUES. OUR NETWORK OF ATTORNEYS AND PROFESSIONAL
STAFF WILL PROVIDE EXPERT GUIDANCE AND REPRESENTATION. WE HAVE
DEDICATED OUR CAREERS TO STANDING UP FOR YOUR RIGHTS. WE WILL
ENSURE THAT THE BEST POSSIBLE OUTCOME IN YOUR LEGAL MATTER IS
ACHIEVED." Ex. 2, "Welcome to the Program" materials/script, at Page 3.

13
14
15
16

    35.    Yet, perplexingly, and despite the "Welcome to the Program" materials, Ex. 2,
claiming to be from "your attorney", Kevin Mason, and "your law firm", Kevin Mason, P.A.
(now replaced by the entity, GM Law Firm), the final page (Page 20) of Ex. 2 contains the
following contact information for the "program":



**ADDITIONAL QUESTIONS?**
CONTACT US.

PHONE: 1-877-212-6920      FAX:    866-219-7237      10

17
18
19
20
21
22
23
24
25
26
27
28

---

[10] This was the same situation when Stuart Goldberg was briefly the attorney marketing front for this racket in early 2015, when Brian Winkler was signed up into the Defendants' "program". The names of the attorney marketing fronts, and their law firms, are interchangeable in this Gregory Fishman/Julie Queler/NLSS/Resolvly operation.

36.     A copy of Brian Winkler's March 5, 2015, engagement letter with original NLSS attorney marketing front, Stuart Goldberg, is attached to, and incorporated into, this Complaint as Exhibit "3".

37.     NLSS, via advanced-fee payments processed by Reliant Account Management (RAM), drafted $362.28 for 60 months **(for an out-of-pocket total of $21,736.89)** from Brian Winkler's bank account, without providing him any debt resolution, or legal services, of any value, whatsoever. As a matter of fact, the Defendants' "program" has caused Brian Winkler to go into default on his student loans, with large fees and interest being added to his student loan balance. Brian Winkler's credit has, consequently, been severely harmed by these reported student loan defaults. Further, Brian Winkler faces imminent litigation from the holders of his student loan debt, with interest and fees, due to these defaults.

38.     The Defendants are masters at building trust in the client of this "program"; trust that is abused to steal the illegal, advanced-fee, monthly "program" payments from their client. For instance, one of the Defendants' methods at building, and maintaining, the trust of their client was bi-weekly telephone calls with "paralegals" from the "program" where these agents of the Enterprise would string along client, like Brian Winkler, with puffery such as: "everything is going great on your account"; "these things take time: it's a lot of hurry up and wait"; "and this is just how the process works." Ismael Avila is the main, but not the only, "program paralegal" who handled Brian Winkler's bi-weekly "program" check-up calls.

39.     Further, the Defendants even created a client newsletter, the GM Law Firm Newsletter, that they sent to the "program's" clients, including Brian Winkler, in April 2018, to continue to maintain their trust (and keep the monthly ACH payments flowing to

the Defendants). A copy of this April 2018 Program Newsletter is attached to, and incorporated into, this Complaint as Exhibit "4".

40.     Brian Winkler grew suspicious of the Defendants' program in February 2020, after he could not get answers to his satisfaction from the Defendants about the purported progress being made on the resolution of his student loan balance.

41.     Brian Winkler cancelled his enrollment in the Defendants' program in April of 2020, after making 60 months of payments, in good faith, to the Defendants. The out-of-pocket loss of $21,736.89, alone, has financially devastated Brian Winkler.

42.     Further, this financial loss has caused Brian Winkler a cascade of consequential financial, hedonic, and psychological harm to be described to the jury at trial.

## TOLLING OF THE APPLICABLE STATUTES OF LIMITATIONS

43.     Brian Winkler had no way of knowing the true nature and extent of Defendants' illegal advanced-fee "student loan debt resolution" telemarketing scheme necessary to prosecute his claims until April 2020, when he finally discovered that the Defendants' "program" is not what he was promised. As demonstrated in this Complaint, the Defendants were intent on hiding their behavior from Brian Winkler to keep his monthly payments to them flowing.

44.     Defendants were under a continuous duty to disclose to Brian Winkler the true character, quality, and nature of the legal representation, and other "student loan debt resolution" services, that they were providing.

45.     Defendants knowingly and actively concealed their illegal advanced-fee "student loan debt resolution" telemarketing scheme, and Brian Winkler reasonably relied upon Defendants' knowing and active concealment. Brian Winkler had no way of knowing

12

the true character, quality, and nature of the legal representation for which he had been charged.

46.     Accordingly, the applicable statutes of limitations have been tolled by operation of the discovery rule and Defendants' concealment with respect to all claims pleaded in this Complaint. Due to this, Defendants are estopped from relying on any statutes of limitations in defense of this action. Further, Defendants' conduct, as directed by Gregory Fishman, Julie Queler, Kevin Mason, and Chantel Grant, was part of a continuing, systematic practice, with the last act in this ongoing illegal, advanced-fee "student loan debt resolution" telemarketing scheme taking place within the applicable statute of limitations. As such, the Defendants are liable for all acts undertaken as part of the scheme as continuing violations.

## COUNT ONE – VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1962(C), AGAINST ALL DEFENDANTS

47.     Brian Winkler hereby incorporates, by reference, the preceding paragraphs of this Complaint.

48.     Brian Winkler is a "person" as that term is defined in 18 U.S.C. §§ 1961(3) and 1962(c).

### A.     Enterprise

49.     For purposes of this claim, the RICO "enterprise" is an association-in-fact, as the term is defined in 18 U.S.C. §§ 1961(4) and 1962(c), consisting of GM Law Firm, LLC; Kevin P. Mason, individually; Chantel L. Grant, individually; National Legal Staffing Support, LLC; Resolvly, LLC; Gregory Fishman, individually; Julie Queler, individually; and John and Jane Doe Defendants 1-5, and XYZ Business Entities ("the Enterprise"). The

13

Enterprise is separate and distinct from the persons and businesses that constitute the Enterprise.

50.     The Enterprise was primarily managed by Gregory Fishman, Julie Queler, Kevin Mason, and Chantel Grant.

51.     The companies and individuals that constitute the Enterprise were associated for the common purpose of defrauding their clients by charging them for illegal, advanced-fee "student loan debt resolution" legal services, via a nationwide cold-call telemarketing operation[11], and otherwise defrauding clients out of their monthly fees based upon promises of complete student loan debt elimination through their "program".

52.     At all relevant times, the Enterprise was engaged in, and its activities affected, interstate commerce. The proceeds of the Enterprise were distributed to its participants.

53.     The Enterprise has operated from at least January 2015 and its operation is ongoing. The Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which the participants engage.

**B.      The Pattern of Racketeering Activity**

54.     At all relevant times, in violation of 18 U.S.C. § 1962(c), Gregory Fishman, Julie Queler, Kevin Mason, and Chantel Grant have managed the affairs of the Enterprise through a pattern of racketeering activity as defined in RICO, 18 U.S.C. § 1961(5), as described in this Complaint. Gregory Fishman, Kevin Mason, and Chantel Grant have conducted the affairs of the Enterprise and participated in the operation and management of the Enterprise. Gregory Fishman and Julie Queler participate in this pattern of racketeering activity through the business entities, National Legal Staffing Support and Resolvly (and,

---

[11] With sales leads of vulnerable student loan debtors, like Brian Winkler, supplied to the Enterprise by Resolvly.

quite likely, other presently unknown business entities controlled by Gregory Fishman and Julie Queler).

**C.     The Predicate Acts of Mail and Wire Fraud**

55.     The pattern of racketeering activity consisted of mail and/or wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. Specifically, Kevin Mason, Chantel Grant, Gregory Fishman, NLSS, and Resolvly, engaged in an intentional scheme or artifice to defraud their clients into setting up monthly auto-draft payments under the false, or negligent, premise that the Defendants would completely eliminate their clients' student loan balances with their respective creditors for payment of 50% of their total loan balance, paid over several years of monthly payments to NLSS/Kevin Mason/GM Law Firm, via RAM as the payment-processor.

56.     Of course, the Enterprise's impossible promises of total student loan debt elimination never happen. The Defendants simply pocket these "plan payments" and otherwise convert them for their own, personal gain. Not one cent of this money flows to the consumers' student loan creditors. The Defendants never settle any of the consumers' student loan accounts as a part of their "program".

57.     The false statements and omissions, and mail and/or wire communications that were made by NLSS/Kevin Mason/Resolvly/GM Law Firm/Chantel Grant and John and Jane Does Defendants 1-5/XYZ Business Entity Defendants 1-5 in furtherance of the scheme constitute predicate acts of mail and/or wire fraud.

58.     It was reasonably foreseeable to all Defendants that the mails and/or wires would be used in furtherance of the scheme, and the mails and/or wires were in fact used to further and execute the scheme.

15

59.     The nature and pervasiveness of the Enterprise necessarily entailed frequent wire and/or mail transmissions. The precise dates of such transmissions cannot be alleged without access to the books and records of the Defendants. Nevertheless, Brian Winkler can allege such transmissions to himself, personally. The client emails, and bi-weekly client calls between NLSS/GM Law Firm and the victims of this racket, including Brian Winkler, were all aimed at keeping the monthly payments to the Defendants flowing.

60.     For the purpose of furthering and executing the scheme, the Defendants regularly transmitted and caused to be transmitted by means of wire communication in interstate commerce writings, electronic data and funds, and also regularly caused matters and things to be placed in post offices or authorized depositories, or deposited or caused to be deposited matters or things to be sent or delivered by private or commercial interstate carriers.

61.     These communications contained both affirmative misrepresentations about the nature of the "program" charges, and were also intended to deceive Brian Winkler, and many others, into believing that the monthly "program" charges assessed to their bank accounts was legitimate and would result in the complete satisfaction of their student loan debts.

62.     These are only examples of certain instances of the pattern of racketeering activity consisting of mail and/or wire fraud violations engaged in by the Defendants. Each electronic and/or postal transmission was incident to an essential part of the scheme. As detailed above, the Defendants engaged in similar activities with respect to Brian Winkler, and likely thousands of other victims, nationwide.

63.     Each interstate wire transfer of funds from Brian Winkler to RAM, and then from RAM to NLSS (and presumably further downstream transfers, from there, to the other

16

participants in this Enterprise), was incident to an essential part of the scheme. As detailed above, the Defendants engaged in similar activities with respect to Brian Winkler, and thousands more, nationally.

64.     Additionally, each such electronic and/or postal transmission constituted a predicate act of wire and/or mail fraud in that each transmission furthered and executed the scheme to defraud the Defendants' clients, including Brian Winkler.

65.     The predicate acts of mail and wire fraud constitute a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5). The predicate acts were not isolated events, but related acts aimed at the common purpose and goal of defrauding the Defendants' clients to pay unlawful, monthly, advanced-fees for cold-call telemarketed "student loan debt resolution" legal services (as a part of a "program" that also does not exist), solely in order for the Defendants to reap illicit profits.

66.     Additionally, Defendants, NLSS/Resolvly/Gregory Fishman/Julie Queler/Kevin Mason/GM Law Firm/Chantel Grant/John and Jane Doe Defendants 1-5 and/or XYZ Business Entities 1-5 all directly engaged in a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(5), by their repeated, flagrant, and continuing violations of 16 C.F.R. § 310.4(a)(5)(i)'s prohibition on the collection of payment of advanced-fees for telemarketed "debt relief services" prior to the underlying consumer debts having either been settled or renegotiated.

67.     Even further, Defendants, NLSS/Resolvly/Gregory Fishman/Julie Queler/Kevin Mason/Kevin Mason, P.A./Chantel Grant/John and Jane Doe Defendants 1-5/XYZ Business Entities 1-5 all directly engaged in a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(5), by their repeated, flagrant, and continuing violations of 16 C.F.R. § 310.3(a)(2)(x). This is because the Telemarketing Sales Rules prohibit sellers and

telemarketers from misrepresenting, directly or by implication, any material aspect of any debt relief service, including, but not limited to, the amount of money or the percentage of the debt amount that a customer may save by using the service.

68.     All Defendants have substantially participated in these predicate acts. These activities amounted to a common course of conduct, with similar pattern and purpose, intended to deceive borrowers.

**D.     Injury to Brian Winkler**

69.     As a direct and proximate result of violations of 18 U.S.C. § 1962(c) by Defendants, Brian Winkler has been injured in his business or property within the meaning of 18 U.S.C. § 1964(c). Brian Winkler paid and was charged for unlawful, monthly auto-draft charges to his bank account by reason, and as a direct, proximate, and foreseeable result, of the scheme alleged.

70.     Under the provisions of 18 U.S.C. § 1964(c), all Defendants are jointly and severally liable to Brian Winkler for three times the damages sustained, plus the costs of bringing this suit, including reasonable attorneys' fees.

## COUNT TWO – FRAUD
## AGAINST ALL DEFENDANTS (OTHER THAN GM LAW FIRM, LLC, AND KEVIN MASON)

71.     Brian Winkler incorporates, by reference, the preceding paragraphs of this Complaint.

72.     The intentional misrepresentation of material facts related to the Defendants' purported student loan debt resolution "program" made by Defendants, NLSS/Chantel Grant/Resolvy/Gregory Fishman/Julie Queler, and their agents working on their behalf, and

18

under their instruction, to Brian Winkler constitute separate frauds that have been committed against him, as detailed in this Complaint.

73.     The Defendants have committed, or actively participated in, knowing and intentional misrepresentations of the services provided by the student loan debt resolution "program" that is at issue in this lawsuit. These misrepresentations – that Brian Winkler will be entirely debt free from his student loans for payment of 50% of his total student loan balance, in connection with the "program", over 72 months of monthly "program" payments – were material and they are knowingly false.

74.     As a result of his reasonable reliance on NLSS'/Chantel Grants'/Gregory Fishman's/Julie Queler's/Resolvly's, and their agents', fraudulent misrepresentations, detailed in this Complaint, Brian Winkler has suffered an ascertainable loss of money, property, and other consequential and hedonic damages.

75.     As a result of NLSS'/Chantel Grants'/Gregory Fishman's/Julie Queler's/Resolvly's, and their agents', fraudulent misrepresentations about their student loan debt resolution "program", Brian Winkler is entitled to recover compensatory damages, all costs of litigation, along with punitive damages in an amount sufficient to deter such conduct in the future, and attorney's fees.

## COUNT THREE – LEGAL MALPRACTICE
## AGAINST DEFENDANTS, GM LAW FIRM, CHANTEL GRANT, KEVIN MASON AND JOHN AND JANE DOE ATTORNEY DEFENDANTS 1-5

76.     Brian Winkler incorporates, by reference, the facts pleaded in the preceding paragraphs of this Complaint.

77.     Attorneys, Kevin Mason, Chantel Grant, and their law firm, GM Law Firm, and currently unidentified attorneys and business entities working with these attorneys and

law firms (John and Jane Does 1-5), have committed breaches of the tort-based duties that they owed to Brian Winkler, as their client.

78.    As a result of his trust of Chantel Grant's, Kevin Mason's, and GM Law Firm's negligent omissions/negligent legal services – believing that these attorney and law firm Defendants would eliminate his student loan debts, as promised – Brian Winkler has suffered an ascertainable loss of money, property, and other consequential and hedonic damages (including damage to his credit reports).

79.    Further, these attorney and law firm Defendants violated the professional duties that they owed to Brian Winkler when they charged him their illegal, and unreasonable[12], advanced-fees for the telemarketed student loan debt relief promised to Brian Winkler, described in this Complaint, but that these attorney and law firm Defendants never actually provided.

80.    Based upon this professional negligence cause of action against these attorney and law firm Defendants, Chantel Grant/Kevin Mason/GM Law Firm, Brian Winkler demands a judgment against these Defendants, jointly and severally, for: all actual damages suffered as a result of the negligence of these Defendants; all consequential damages suffered as a result of the negligence of these Defendants; a refund of all monies paid to

---

[12] Payment of $26.091.50* in so-called "legal fees" for only form cease and desist letters sent to Brian Winkler's student loan creditors (and the April 2018 issue of the Program Newsletter, Ex. 4 to this Complaint). These cease and desist letters, in fact, only **harmed** Brian Winkler, since they concealed from him the severe delinquency on his student loans that resulted from the Defendants' "program". The real purpose of these cease and desist letters is not to benefit the Defendants' clients, like Brian Winkler, but to conceal the student loan delinquencies from the Defendants' clients in order to maximize the amount of monthly payments the Defendants receive, before their clients (victims) inevitably discover that they have been lied to, and defrauded, by the Defendants.

*It is telling, but not surprising, that the Defendants' scheme made sure to include the extra fifty cents in their illegal, advanced-fee, student debt resolution "program" fees.

these Defendants, with pre-and-post judgment interest; all attorney's fees; and all costs of litigation.

## COUNT FOUR – BREACHES OF THE DUTY OF GOOD FAITH AND FAIR DEALING AGAINST ALL DEFENDANTS

81.    Brian Winkler incorporates, by reference, the facts pleaded in the preceding paragraphs of this Complaint.

82.    All Defendants – as described with particularity throughout this Complaint – have repeatedly violated the duties of good faith and fair dealing that they owed to Brian Winkler. This is because, through their RICO Enterprise, the Defendants have all profited from their concerted frauds perpetuated against Brian Winkler.

83.    Specifically, Defendants, NLSS/Kevin Mason/GM Law Firm/Chantel Grant/Gregory Fishman/Julie Queler/Resolvly, and their agents, have committed willful breaches of the duty of good faith and fair dealing owed to Brian Winkler when they unlawfully, and dishonestly, solicited advanced-fees **contract** for the telemarketed student loan debt resolution "program", from Brian Winkler.

84.    As a sole and proximate result of these wrongful acts on the part of all Defendants, respectively and collectively, Brian Winkler demands a judgment against them, jointly and severally, for: all actual damages suffered as a result of Defendants' wrongful and dishonest conduct; a refund of all client-monies charged by the Defendants, with pre-and-post judgment interest; all attorney's fees; costs of litigation; and punitive damages.

## PRAYER FOR RELIEF

85.    Brian Winkler requests that this Court enter a judgment against Defendants and in favor of him, and award the following relief:

21

a.      that the conduct described in this Complaint be declared, adjudged, and

decreed to be unlawful;

b.      award Brian Winkler appropriate relief, including actual damages,

statutory damages, treble damages, punitive damages, and restitutionary

disgorgement;

c.      award all costs of prosecuting the litigation, including expert fees;

d.      award pre-and-post-judgment interest;

e.      award attorneys' fees; and

f.      grant such additional relief as this Court may deem just and proper.

BRIAN WINKLER
*The Plaintiff*

By: /s/ James Cool
**HONOR LAW GROUP, PLLC**
James M. Cool
State Bar No. 028023
4450 S. Rural Road
Suite C-220
Tempe, AZ 85282
(602) 282-0223 (office)
(888) 651-1270 (facsimile)
cool@aztrialattorneys.com

*Local Counsel for Plaintiff*

By: /s/ Macy D. Hanson
**(Pro hac vice application forthcoming)**
Macy D. Hanson
Miss. Bar No. 104197
macy@macyhanson.com
The Law Office of Macy D. Hanson, PLLC
102 First Choice Drive
Madison, Mississippi 39110
Telephone: (601) 853-9521
Facsimile: (601) 853-9327

22